UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SCARLETT D. DENNIS                                                          PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 2:20CV133-TBM-RPM

COMMISSIONER OF SOCIAL
SECURITY                                                                    DEFENDANT

## REPORT AND RECOMMENDATIONS

Before the Court is Scarlett D. Dennis' complaint appealing from the Commissioner of

Social Security's decision denying her claim for disability benefits under the Social Security Act.

Dennis filed her application for benefits on March 17, 2017[1], alleging a period of disability

beginning February 27, 2017, due to fibromyalgia, Chiari malformation type one, bipolar

disorder, mood disorders, cerebellar ectopia, undifferentiated connective tissue disease,

sensorineural hearing loss, anxiety, and depression.  Doc. [13] at 39, 129-30, 134-35, 200-16.

The claim was denied initially and on reconsideration.  *Id.* at 162-68, 170-79.  Plaintiff requested

and was granted a hearing before an Administrative Law Judge (ALJ).  *Id.* at 90-121, 182-94.

Plaintiff was 39-years old at the alleged onset of disability, with an 11th grade education

and past relevant work as a manager at a restaurant/truck stop.  *Id.* at 35, 224, 229.  In evaluating

Plaintiff's application, the ALJ determined that Plaintiff has not engaged in substantial gainful

activity since February 27, 2017.  *Id.* at 26.  The ALJ concluded that Plaintiff had severe

impairments of fibromyalgia and peripheral neuropathy.  *Ibid.*  However, the ALJ found that

Plaintiff did not meet the criteria for any of the listed impairments.  *Id.* at 26-29.  The ALJ

---

[1] There is some discrepancy in the record as to whether the application was filed on March 17th or March 23rd of 2017.  For purposes of this opinion, the Court relies on the ALJ's finding that the application was submitted on March 17, 2017.

determined that Plaintiff retained the residual functional capacity (RFC) to perform light work,

but she was limited to only simple, routine, and repetitive tasks with few, if any, workplace

changes; she should not interact with the general public; and she could have only occasional

interaction with coworkers but could be in close proximity to coworkers. *Id.* at 29. Relying on

the testimony of a vocational expert, the ALJ found that Plaintiff was unable to perform her past

relevant work. *Id.* at 35. However, the ALJ determined that Plaintiff could still perform other

jobs that exist in significant numbers in the national economy. *Id.* at 36. Accordingly, the ALJ

concluded that Plaintiff is not disabled as defined by the Social Security Act. *Id.* at 37.

On July 15, 2019, the ALJ issued an unfavorable decision. *Id.* at 23-37. The Appeals

Council denied Plaintiff's request for review. *Id.* at 1-3. Plaintiff then filed the instant

complaint. In her brief in support, Plaintiff identifies three points of error in the ALJ's decision:

(1) the ALJ erred in finding Plaintiff's obesity and mental impairments were not severe and in

failing to consider how those impairments, in combination with Plaintiff's severe impairments of

fibromyalgia and peripheral neuropathy met or equaled any impairment in the listing of

impairments; (2) the ALJ erred in finding Plaintiff maintained the RFC to perform light work;

and (3) the ALJ erred in finding that Plaintiff can perform jobs exist in significant numbers in the

national economy. Doc. [14].

### Law and Analysis

### Standard of Review

The federal district court reviews the Commissioner's decision only to determine whether

the final decision is supported by substantial evidence and whether the Commissioner used the

proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.

1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the

Commissioner's decision is supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from

performing any past relevant work; and (5) the impairment prevents the claimant's ability to

adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but

the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.

1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA

must demonstrate that the claimant can perform another occupation that exists in significant

numbers in the national economy.  The burden then shifts back to the claimant to establish that

he cannot perform this alternative employment.  *Id.*

**Dr. Tanious' Medical Opinion**

Although Plaintiff identifies several points of error in her brief, the undersigned finds that

this matter should be remanded based on Plaintiff's contention that the ALJ erred with respect to

Plaintiff's RFC determination.  Since remand is appropriate, the Court does not reach the

remainder of Plaintiff's arguments.  *See, e.g., Morgan v. Colvin*, 803 F.3d 773, 775 (5th Cir.

2015).  Plaintiff argues that the ALJ's RFC determination is not supported by substantial

evidence.  Specifically, the ALJ concluded that Plaintiff had the capacity to perform light work;

however, Plaintiff argues that this conclusion is not supported by any medical opinion evidence.

In the absence of a medical opinion supporting an RFC to perform light work, Plaintiff contends

that the RFC is not supported by substantial evidence.

As an initial matter, it appears that the ALJ applied the incorrect regulations regarding

medical opinions.  For any application filed "on or after March 27, 2017," 20 C.F.R. § 404.1520c

applies.  Under these more recent social security regulations, an ALJ is required to "explain" his

persuasiveness finding insofar as "consistency" and "supportability" are concerned.  20 C.F.R. §

404.1520c; 20 C.F.R. § 416.920c.  Pursuant to 20 C.F.R. § 404.1520c, the ALJ "will not defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical finding(s)".  In other words, ALJs are no longer required to give

controlling weight to the opinions of treating physicians.  However, before an ALJ may discount

or reject an opinion, he or she must "articulate in [the] determination or decision how persuasive

[the ALJ] find[s] all of the medical opinions ... in [the claimant's] case record."  20 §

404.1520c(b); *see Moore v. Saul*, No. 3:20-CV-48-DPJ-MTP, 2021 WL 754833, at *3

(S.D.Miss. Feb. 26, 2021).  In evaluating persuasiveness, the ALJ considers five factors: (i)

supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's

specialty; and (v) other factors that tend to support or contradict the opinion.  20 C.F.R. §

404.1520c(c).  The most important factors in evaluating persuasiveness are supportability and

consistency.  20 C.F.R. 404.1520c(b)(2).

For those applications filed prior to March 27, 2017, 20 C.F.R. § 404.1527 applies.

Plaintiff filed her application for benefits on March 17, 2017, ten days prior to the effective date

of § 404.1520c.  In other words, the ALJ should have analyzed Plaintiff's application under the

old "treating physician" rule rather than under the current persuasiveness analysis.  Although the

ALJ cited to 20 C.F.R. § 1527 (the pre-March 27, 2017, regulations) in her decision, she

proceeded to conduct what looks like a persuasiveness analysis of the various medical opinions

without making any reference to what weight, if any, she gave to those medical opinions.

Pursuant to 20 C.F.R. § 1527, the opinions, diagnoses, and medical evidence of a treating

physician ordinarily should be accorded considerable weight in determining disability.  *Perez v.*

*Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005); *Newton*, 209 F.3d 448, 455 (5th Cir. 2000).  The

treating physician's opinion on the nature and severity of impairments will be given controlling

weight if it is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with other substantial evidence. *Newton*, 209 F.3d at 455.

Before declining to give controlling weight to a treating physician, the ALJ must consider the

factors set forth at 20 C.F.R. § 404.1527(d)(2): (1) the physician's length of treatment of the

claimant; (2) the physician's frequency of examination; (3) the nature and extent of the

treatment relationship; (4) the support of the physician's opinion afforded by the medical

evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the

specialization of the treating physician. Absent reliable medical evidence from a treating or

examining physician controverting the claimant's treating specialist, an ALJ may reject the

opinion of the treating physician only if the ALJ performs a detailed analysis of the treating

physician's views under the criteria set forth in 20 C.F.R. § 404.1527, 419.927. *Newton*, 209

F.3d at 453. The ALJ is free to assign little or no weight to the opinion of any physician for

good cause. *Newton*, 209 F.3d at 455-56. Good cause may permit an ALJ to discount the weight

of a treating physician relative to other experts where the physician's evidence is conclusory; is

unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; or is

otherwise unsupported by the evidence. *Id.* A treating physician's opinion may be rejected

when the evidence supports a contrary conclusion. *Martinez*, 64 F.3d at 176.

In this case, the ALJ determined that Plaintiff can perform light work without any

additional physical limitations. With respect to Plaintiff's physical limitations, the ALJ only

discussed two medical opinions—Dr. Karen Hulett and Dr. Aremmia Tanious. Doc. [13] at 33-

35. First, as noted by the ALJ, Dr. Hulett (a state agency consultant) opined that Plaintiff's

physical impairments were non-severe. *Id.* at 33, 139. The ALJ found this to be inconsistent

with the medical evidence which instead supported a finding of fibromyalgia as a severe physical

impairment.  *Id.* at 33.  Thus, it does not appear that the ALJ relied on Dr. Hulett's opinion when finding that Plaintiff can perform light work.

Second, the ALJ discussed the opinion of Dr. Tanious, a neurologist who treated Plaintiff as a patient.  *Id.* at 34-35.  When assessing Dr. Tanious' opinion, the ALJ did not identify Dr. Tanious as a treating physician; however, the medical records suggest that Dr. Tanious in fact was her treating physician.  For example, in a letter dated March 17, 2016, Dr. Tanious states that Plaintiff "has been a patient of mine for almost two years."  *Id.* at 465.  Instead of applying the treating physician rule, the ALJ instead explored the "consistency" and "persuasiveness" of Dr. Tanious' opinion.  *Id.* at 34-35.  The ALJ found Dr. Tanious' opinion to be "unpersuasive".  *Id.* at 35.  By implication, the ALJ did not give "controlling weight" to Plaintiff's treating neurologist; however, there is no evidence from a treating or examining physician controverting Dr. Tanious' opinion.

Based on Plaintiff's fibromyalgia, depression, and peripheral neuropathy, Dr. Tanious concluded that Plaintiff is unable to work.  *Id.* at 465-66.  Dr. Tanious also provided opinions regarding Plaintiff's specific physical limitations.  He opined that Plaintiff could not stand or sit for long periods; nor lift or bend.  *Id.* at 465.  According to Dr. Tanious' RFC assessment, Plaintiff would need to lie down, rest, or recline at unpredictable intervals more than three times during an eight-hour day, would need to take unscheduled breaks, and would be absent from work more than four times per month.  *Id.* at 641-42.  The ALJ found Dr. Tanious' opinion "unpersuasive" and "inconsistent" with the medical records, examination findings, and Dr. Tanious' own treatment notes.  *Id.* at 35.  The ALJ then string cited medical record evidence without any further analysis.  *Ibid.*  The ALJ did not conduct a detailed analysis of Dr. Tanious' opinion under the relevant criteria.  Absent from the ALJ's decision is any finding of good cause

for not giving controlling weight to the treating physician regarding Plaintiff's physical limitations.

The ALJ acknowledged Dr. Tanious' findings regarding Plaintiff's physical limitations, such as her ability to sit, stand or bend; but then analyzed only Plaintiff's non-exertional limitations, such as her ability to perform simple, routine tasks and to work with the public and co-workers.  The ALJ's decision is silent as to Dr. Tanious' findings regarding *physical* limitations.  The vocational expert conceded that if Plaintiff were to be absent more than two days per month or off task more than five percent of a workday, then she would not be able to perform the jobs identified as suitable for Plaintiff.  *Id.* at 119.  As noted earlier, Dr. Tanious opined that Plaintiff's physical condition would cause her to be absent more than four times per month and require her to lie down, rest, or recline three times per day at unpredictable intervals.

In this case, the only physician to offer an opinion regarding Plaintiff's physical limitations (Plaintiff's treating neurologist) concluded that Plaintiff's condition would cause her to miss four or more days of work per month.  The ALJ rejected this opinion but without identifying any contrary medical opinion to support the RFC determination that Plaintiff could perform light work but without any other physical limitations.  Significantly, the vocational expert testified that if Plaintiff were to miss three or more days of work per month, she would not be able to perform the jobs identified by the ALJ as suitable.  *Id.* at 119.  Other courts have concluded that such a limitation, when assessed by a treating physician, would preclude a claimant from working on a regular and continuing basis.  *See Leroux v. Astrue*, 2012 WL 4442409, *3-4 (N.D.Tex. Aug. 27, 2012); *Pearson v. Astrue*, 2012 WL 3044296, at *9 (N.D.Ohio June 25, 2012); *Ploesser v. Apfel*, 2000 WL 92811 at *15-18 (D.Or. Dec. 11, 1998).  Based on the foregoing, the ALJ's failure to properly evaluate Dr. Tanious' medical opinion

cannot be deemed harmless error. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (An error is harmless if it does not "affect the substantial rights of a party," or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error).

**Substantial Evidence for RFC**

Plaintiff also asserts that the ALJ's RFC assessment is not supported by substantial evidence. In response, the Commissioner merely argues that the RFC is solely the responsibility of the ALJ and not the responsibility of any physician. Doc. [15] at 10-11. However, the Commissioner fails to cite to a single shred of evidence, medical or otherwise, to support the ALJ's finding that Plaintiff can perform light work. *See ibid.* The ALJ provided no discussion of medical opinion evidence with respect to Plaintiff's physical limitations other than her assessment of the opinions of Dr. Hulett and Dr. Tanious. Instead, the ALJ merely cited to raw medical data consisting of numerous normal examination findings and one reference to improved symptoms with medication. *See id.* at 30-33. The ALJ discussed some of Plaintiff's self-reported limitations as well—for example, she can lift five pounds, but is unable to pick up a gallon of milk or a ten-pound bag of potatoes; she can sit for one hour and stand for 20 minutes; and she can walk only 20 to 100 yards before needing to take a break. *Id.* at 30, 33, 107-09, 263. Taken at face value, Plaintiff's statements would not seem to support an RFC of light work as defined by the Social Security Regulations.[2]

---

[2] As defined by the Social Security Regulations, 20 C.F.R. § 416.967, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

In this case, the ALJ rejected Dr. Tanious' opinion indicating limitations on Plaintiff's ability to stand, walk, bend, and perform job duties on a consistent basis; but the ALJ did not explicitly rely on any other medical opinion when making an RFC determination as to Plaintiff's physical limitations.  "[W]hen the ALJ rejects the only medical opinion of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Simoneaux v. Comm'r of Soc. Sec.*, No. CV 18-270-RLB, 2019 WL 2269916, at *8 (M.D. La. May 28, 2019) (quoting *Garcia v. Berryhill*, No. EP-17-CV-00263-ATB, 2018 WL 1513688, at *2 (W.D.Tex. Mar. 27, 2018).  Unless the remaining record "clearly establish[es]" the effect that the claimant's condition has on her ability to work, the ALJ must fill this evidentiary gap with another medical opinion.  *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  Having rejected Dr. Tanious' opinion with respect to Plaintiff's physical limitations, and in the absence of any medical opinion supporting a finding of light work, the undersigned concludes that the ALJ's RFC determination lacks substantial evidence.  *See Williams v. Astrue*, 355 F. App'x 828, 831-32 (5th Cir. 2009); *Martin v. Berryhill*, No. 1:18CV167-HSO-RHW, 2019 WL 4439122, at *4 (S.D.Miss. June 14, 2019).

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that this matter be remanded to the Commissioner for further consideration.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the

District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 26th day of January 2022.


/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE